**UNITED STATES of America, Plaintiff-Appellee,**

v.

**LAMASTUS AND ASSOCIATES, INC., Defendant-Appellant.**

**No. 85-3290**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

April 4, 1986.

---

Bruce A. Blaylock, New Orleans, La., for defendant-appellant.

John P. Volz, U.S. Atty., S. Mark Gallinghouse, Asst. U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

PER CURIAM:

This case is affirmed on the basis of the district court's opinion, which is attached hereto as an Appendix.

AFFIRMED.

### APPENDIX

### UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LOUISIANA

Civil A. No. 84-2703
SECTION "F"

### OPINION

At issue here is the right of the United States to regulate private navigable waterways.

The United States brought this action against the defendant, Lamastus and Associates, Inc., to recover a civil penalty in the amount of $2,000 based on the defendant's violations of United States Coast Guard regulations promulgated under the Federal Ports & Waterways Safety Program, 33 U.S.C. section 1221 *et seq.*

On June 24, 1980, the M/V VOLUNTEER STATE and two unnumbered barges, all owned by the defendant, were observed to be blocking the mouth of the Fasciane Canal, North Shore of Lake Pontchartrain, in St. Tammany Parish, Louisiana. Additional unnumbered barges,

also owned by the defendant, were improperly moored to the bank of the canal solely by bow lines. The barges were drawn into the channel and, thereby obstructed navigation in the channel because stern lines were not used to moor the barges. The defendant was notified, on March 27, 1981, that the United States Coast Guard was considering assessment of a civil penalty for the defendant's obstruction of the mouth of the Fasciane Canal on June 24, 1980. The notification cited violations of 33 U.S.C. sections 1231 & 1232 and 33 C.F.R. section 162.75(b)(1) & (b)(3)(ii). At an informal hearing held before a hearing officer of the United States Coast Guard, the defendant admitted that the canal may have been blocked for a few hours because of a breakdown of the M/V VOLUNTEER STATE, but defendant would not comment as to the mooring procedure used for the barges. The defendant also asserted that it owned the Fasciane Canal and had a right to regulate traffic on it. The hearing officer concluded that the defendant obstructed the canal so as to impede its navigability in violation of 33 C.F.R. section 162.75(b)(1) and failed to moor its barges properly with bow and stern lines in violation of 33 C.F.R. section 162.75(b)(3)(ii). The officer assessed the $2,000 penalty. The defendant appealed the decision to the Commandant of the United States Coast Guard. The Commandant affirmed the officer's decision. To date, the defendant has not paid the penalty.

The defendant's sole objection to paying the penalty is based on its contention that the United States Coast Guard does not have jurisdiction to regulate and impose penalties for the obstruction of a privately owned navigable waterway such as the Fasciane Canal. The United States ac-knowledges that the canal was artifically constructed by a predecessor in title to defendant and has been privately maintained by the defendant since its construction,[1] but, nonetheless, it argues that the United States Coast Guard has jurisdiction over the canal because it is a navigable waterway used by both commercial[2] and non-commercial traffic and is subject to the ebb and flow of the tides. The United States also claims that the Supreme Court of Louisiana, in *Discon v. Saray, Inc.*, 262 La. 997, 265 So.2d 765 (1972), declared that the canal was a right of way dedicated to public use and, thus, the defendant has no legal right, under state law, to regulate or impede the navigability of the canal. The parties have filed cross-motions for summary judgment representing their respective positions. All materials facts are stipulated.

The Coast Guard regulation proscribing defendant's conduct at issue in this case, 33 C.F.R. section 162.75, states that "[t]he regulations in this section shall apply to ... [a]ll navigable waters of the U.S. tributary to or connected by other waterways with the Gulf of Mexico...." 33 C.F.R. section 162.75(a). For the purpose of defining Coast Guard jurisdiction, 33 C.F.R. section 2.05–25(a)(2) describes "navigable waters of the United States" as "[i]nternal waters of the United States that are subject to tidal influence." Internal waters are described as "waters shoreward of the territorial sea baseline." 33 C.F.R. section 2.05–20(a)(1).

The Fasciane Canal satisfies the regulation's prerequisites for United States Coast Guard jurisdiction. The canal empties into Lake Pontchartrain, which is connected by other waterways to the Gulf of Mexico, and

---

1. The defendant claims that it is the owner of the property on both sides of and beneath the Fasciane Canal. The United States admits that the defendant is the owner of the property on both sides of the canal but contends, relying on *Discon v. Saray, Inc.*, 262 La. 997, 265 So.2d 765 (1972), that the ownership of the canal rests in the North Shore Beach Subdivision, Inc. For the purpose of resolving the issue before the Court, however, it need not be conclusively determined who is the owner of the canal. What is important is that the canal is privately owned; that is not in dispute.

2. The defendant neither admits nor denies that the canal is used by commercial traffic. It need not, however, be determined that the canal is actually used by commercial traffic so long as it is capable of such use. *See infra* text accompanying notes 4–6.

it is an internal waterway located in the United States that is subject to tidal influence. But that does not resolve the issue posed here. Furthermore, neither the applicable Coast Guard regulations nor the statutes on which the regulations are based address the question whether a private as well as public waterway of the United States is subject to Coast Guard jurisdiction.

At the outset, it must be recognized that the Fasciane Canal is purely private waterway. Contrary to the United States' contention, the Supreme Court of Louisiana, in *Discon*, did not go so far as to declare the canal, or the passageway from the canal to Lake Pontchartrain, a right of way dedicated for public use. The Court merely held that the canal was dedicated for the beneficial use of all subdivision lot owners of the subdivision in which the canal is located.[3] *See National Audubon Society v. White*, 302 So.2d 660 (La.App.1974), *writ denied*, 305 So.2d 542 (La.1975); *Vermilion Corporation v. Vaughn*, 356 So.2d 551 (La.App. 1978), *modified on other grounds and remanded sub nom. Vaughn v. Vermilion Corporation*, 444 U.S. 206, 100 S.Ct. 399, 62 L.Ed.2d 365 (1979). Thus, this Court is not persuaded by the United States' attempt to characterize the Fasciane Canal as a public waterway under state law.

In addition, it should be noted that the United States, pursuant to Congress' regulatory authority over navigation conferred by the Commerce Clause of Art. I of the United States Constitution, cannot create a public right of access to a privately constructed and maintained waterway simply because the private waterway joins with other navigable waterways open to use by all citizens of the United States.

*Kaiser Aetna v. United States*, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979); *Vaughn v. Vermilion Corporation*, 444 U.S. 206, 100 S.Ct. 399, 62 L.Ed.2d 365 (1979). The creation of this type of public right of access would, in most instances, require the federal government to flex its eminent domain muscles under the Fifth Amendment of the United States Constitution and, in the process, pay just compensation for the taking of a private property right. *Kaiser Aetna*, 444 U.S. at 180, 100 S.Ct. at 393. In the instant case, however, the United States does not seek to create a public right of access to the Fasciane Canal; it has not and need not invoke its eminent domain power. The federal government, through the United States Coast Guard, only seeks to regulate the navigability of the Fasciane Canal under its Commerce Clause power.

The United States has broad authority under the Commerce Clause to regulate both public and private waters used or capable of being used in interstate commerce. The United States Supreme Court has stated, in reference to a private pond that was converted into a private marina, that:

"there is not doubt that Congress may prescribe the rules of the road, define the conditions under which running lights shall be displayed, *require the removal of obstructions to navigation, and exercise its authority for such other reason as may seem to it in the interest of furthering navigation or commerce.*"

*Kaiser Aetna*, 444 U.S. at 174, 100 S.Ct. at 390 (emphasis added). As explained by the appellate court in *Kaiser Aetna*, the factual inquiry is whether the private waterway is capable of being used for interstate

---

**3.** In *Discon*, the plaintiffs, who were the owners of property bordering on the Fasciane Canal, used the canal as a means of ingress and egress for their watercraft in Lake Pontchartrain. They sought an injunction prohibiting Ray Lamastus from filling in that portion of the canal between his property located on both sides of and near the entrance to the canal. Lamastus was filling in the canal in order to obtain direct access to his property on each side. The Supreme Court of Louisiana granted the injunc-

tion under a state statute prohibiting the obstruction of highways of commerce, including navigable waterways. *See* La.Rev.Stat.Ann. 14:97.

The *Discon* Court explained that, when the canal was constructed in the 1950s, it was included in a subdivision development known as North Shore Beach Subdivision. The Court found that the canal was dedicated for the benefit of the subdivision's lot-owners.

transportation and commerce.[4] *United States v. Kaiser Aetna,* 584 F.2d 378 (9th Cir.1978), *rev'd on other grounds sub. nom. Kaiser Aetna v. United States,* 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979). The private pond (marina) at issue in *Kaiser Aetna* was used as a waterway to Maunalua Bay and the Pacific Ocean by boats moored at the pond. That noncommercial use itself demonstrated that the private pond was capable of use in interstate commerce. *Kaiser Aetna,* 584 F.2d at 382.

In *United States v. DeFelice,* 641 F.2d 1169 (5th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 474, 70 L.Ed.2d 247 (1981), the Fifth Circuit held that artificially constructed and privately owned waterways, including canals, are subject to federal regulatory authority if they are "navigable in fact".[5] It explained that, in order to satisfy the "navigability in fact" test, waterways do not have to sustain actual commerce as long as they are capable of commercial use. 641 F.2d at 1174 n. 11. Thus, the test of "navigability in fact" is met if the private waterway joins existing waterways used in interstate commerce. *Id.* at 1173–75. And, according to the *DeFelice*

Court, waters subject to tidal influence "by their very nature form a continuous water body with interstate waterways". *Id.* at 1175.

The Fasciane Canal is, based on the tests set forth in *Kaiser Aetna* and *DeFelice,* a "navigable water of the United States" and, therefore, subject to United States Coast Guard regulation. The canal, although currently under private ownership, is capable of use in interstate commerce. This conclusion is supported by the fact that the canal is a navigable waterway used by non-commercial traffic,[6] is subject to the ebb and flow of the tides and forms part of a continuous interstate waterway system by its connection to Lake Pontchartrain, which is, in turn, connected by other waterways to the Gulf of Mexico.[7]

Accordingly, the Court upholds the $2,000 penalty assessed against Lamastus and Associates for obstructing the navigability of the Fasciane Canal. Based on the foregoing, accordingly,

IT IS ORDERED that the motion for summary judgment of the United States is GRANTED, and the motion for summary judgment of Lamastus and Associates, Inc.

---

**4.** *Kaiser Aetna* dealt with the jurisdiction of the Army Corps of Engineers, under section 10 of the Rivers and Harbors Act, 33 U.S.C. section 403, to regulate any future construction, excavation or filling affecting the private pond (marina). The Army Corps' jurisdiction, just like the jurisdiction of the Coast Guard here, depended on whether the pond was a navigable waterway of the United States. Relying on *United States v. Appalachian Electric Power Co.,* 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940), and *The Daniel Ball,* 77 U.S. (Wall.) 557, 19 L.Ed. 999 (1870), the Ninth Circuit concluded that any waterway located in the United States that is capable of use in interstate commerce is a navigable waterway of the United States. *Kaiser Aetna,* 584 F.2d at 381–83. The Court's holding was not based on a statutory or regulatory definition of the term "navigable water of the United States," which was particular to Corps' jurisdiction. It cannot be successfully argued that *Kaiser Aetna* is inapplicable in considering the Coast Guard's jurisdiction. Moreover, there does not appear to be any logical reason why the jurisdiction of two government entities should be defined differently.

**5.** *DeFelice,* and the cases cited therein, also dealt with jurisdiction of the Corps of Engineers, un-

der the Rivers and Harbors Act, over construction affecting any of the navigable waters of the United States. Although the *DeFelice* Court discussed the general definitions of "navigable waters of the United States" provided by Corps' regulations, the Fifth Circuit's "navigability in fact" test for determining the Corps' jurisdiction was not based on the Corps' regulations. Thus, as in *Kaiser Aetna,* there is no reason why *DeFelice* should not be applied here.

**6.** The defendant admits that the canal is a navigable waterway used by non-commercial traffic.

**7.** The Court does not believe that *DeFelice* is distinguishable from the instant case on the basis that the private canal, in *DeFelice,* opened on both ends to other navigable waterways, whereas the Fasciane Canal opens at only one end into a navigable waterway, Lake Pontchartrain. The Fasciane Canal deadends at a railroad crossing. A waterway is no less capable of sustaining interstate commerce because it only opens at one end. Furthermore, the pond (marina), in *Kaiser Aetna,* was open at only one end to the bay.

**1354**

is DENIED. Judgment will be entered pursuant to these reasons.

New Orleans, Louisiana, this 28th day of May, 1985.

/s/ Martin L.C. Feldman

UNITED STATES DISTRICT JUDGE